Good morning, Your Honors. May it please the Court, my name is Susan E. Hill. I represent the Medrano family, the Petitioners. This Court asked the parties to concentrate on two specific cases, Rodori v. Holder and Perez-Palafox v. Holder. In this instance, the immigration judge had granted the Medranos cat relief on the basis of their 16-year-old daughter's kidnapping by a, what was described, a gangster who orchestrated all of this from prison. And upon the girl's release, he said that he wanted her to become his bride. And we understand that, but then the BIA did something different. Yes. You said they did something wrong. Yes. The BIA reversed the judge's grant, but it failed to undertake the clear error standard of review. Well, how do we know that? Because the BIA said that's what it was doing. I mean, I could read this for you. The BIA talked about clearly erroneous standard and de novo standard and facts and everything else. And then they went ahead and did it, and you say no, they didn't. Correct, Your Honor. They said this is what we're doing. Well, the BIA did make a boilerplate reference to the standard of review. I don't like the boilerplate argument, because we make boilerplate arguments all the time. It's the same sort of law, of course, when you do things like when we say what the standard of review is. That can also be called boilerplate. But they said it. This isn't like a case where they didn't say it. They said we're looking at facts for clearly erroneous and de novo on the other, on the second issue. They seemed to get that right. Right. They set out the standard of review at the beginning of their decision, but as Rodorio ---- So they stated the law correctly. They stated the law correctly. And we should ignore that because it's boilerplate? Well, and then as the Rodorio case and others indicate, we also look at what the BIA did to determine if they actually applied that standard correctly. And here they did not. They basically jumped into their own factual review. They did not state that they were upholding the immigration judge's facts like they did in Perez-Palafox. Well, let's talk about that. Did the BIA overturn the IJ's factual finding of police involvement in Dayana's kidnapping, or did it find that such involvement, if true, would be aberrational rather than systemic? It stated both. But it did not state it was specifically overturning the judge's factual findings. It did not indicate what was wrong with the judge's factual findings. It just jumped into its own factual findings with regard to police involvement. It said that there ---- it required additionally objective evidence rather than relying on the judge's factual finding, which was based on a credible testimony as well as the judge corroborated his finding with citation to the background country condition reports. And hence, when the BIA reviewed these factual findings, it did not describe why the judge's factual findings were erroneous. It didn't reference the judge's factual findings. But it pretty much set forth what the factual findings were in a way that suggests that the evidence was scant. I mean, they kind of ---- it seemed to me that they were simply exposing the fault in the findings by putting them down on paper. And respectfully, Your Honor, I believe that since this Court and we are discussing that, then that just demonstrates that the BIA decision was not accurate as far as what it was explaining it was doing and whether it was applying that standard of review correctly. The judge made factual findings about the government involvement in the kidnapping, and the judge explained why he made those findings. And the BIA did not accord that. It went and made its own findings. But what findings were made by the IJ about government that this was State-sanctioned as opposed to aberrational conduct by some bad apples? Well, as far as government involvement, the judge stated that this was a ---- he described the man named Elfaye as a child molester and a pedophile who wanted a child bride. He was able to pull the strings and orchestrate this girl's kidnapping as well as her release, and then arranged to have her delivered to him in prison. And he proposed to have ---- she was not actually delivered to him, but he was able to set that up to have her delivered to him and also supposedly to ---- But the IJ made no finding that there was color of law or State action or this was State-sanctioned conduct by the police officers in working with this inmate. Well, the immigration judge said that this man was in custody and that he was able to pull the strings and get this arranged, and then he also remarked that ---- I believe he remarked that police were involved in this. I don't want to beat a dead horse, but there is no finding. Excuse me, Your Honor? There is no findings, as Judge Chen is suggesting. On the immigration judge's part? Yeah. Well, the immigration judge stated that there was instigation by the Salvadoran government and ---- But there was no evidence of acquiescence on the part of the police that Mrs. Medrano was sincere. He, if I may quote, Your Honor, he said ---- He said there was no evidence of acquiescence on the part of the police. I read ---- AR-69. I read, we do not have acquiescence. We have the instigation and we have a sincere witness who has testified that these individuals involved are the police, and he stated he was relying on her credible testimony. Then he additionally went to the administrative record and noted that it indicates that the police are involved with ---- excuse me, I don't know if he said gangs, but he did note that they are involved in kidnappings and many other evidences of corruption, and it was just not a single incident. It was indicated throughout the country. Even if ---- But even if they're police officers, I mean, they instigated this and worked with the inmate, that doesn't prove that they acted under color of law. What's the evidence that they acted under state-sanctioned conduct? It's state-sanctioned in two ways. First, this all occurred when he was in government custody in a prison. Second, the kidnapper stated we are the police, don't bother calling the police because we are the police, therefore discouraging the family from seeking out the assistance of the police, seeking themselves out for assistance in a way. Well, it seems to me, though, that the ---- there's an argument to be made that the BIA took all of the factual findings and just said as a matter of law that is not enough to show past persecution. The BIA just ---- That's what I was getting at when I said they just laid out all the facts and they said it is the ---- yeah, it's not enough. It's purely erroneous. Well, as this Court knows, the BIA then would be required to review the entire factual record. That factual record also includes the statement, the written statement of Diana, the kidnapped victim, who indicated many other details that these people actually were the police and they were involved. They had police radios. They told her that they were police officers. They were not paid enough. They were directly communicating with someone who was in custody and assisting him to carry out all of these actions against her. Additionally, Petitioner's brief cites through several pages many of the country conditions reports that indicate this is not aberrational conduct. This is widespread and rampant throughout El Salvador, and it is unfortunately fairly common and occurs frequently within the country. If the Court does not have any ---- Do you want to shape the balance for rebuttal, see what the government has to say? Yes. Thank you. It's your time, so go ahead. Good morning, Your Honors. May it please the Court, Andrew Nsinga on behalf of the Respondent, the Attorney General. The Board in this case properly conducted a no-vote review of whether or not the evidence was sufficient to show acquiescence. That review is consistent with Kaplan and this Court's decision in Rador, and that decision is also consistent with the regulations and the Attorney General's interpretations of his regulations. But the findings that there was police involvement, number one, and the finding that the police involvement, if that were the case, were aberrational or not aberrational, systemic, and based on systemic government sanction, kind of, those are factual questions, aren't those? They may lead to an ultimate question, but aren't those factual questions? The government submits no. It's not, Your Honor, under the Board's standard of review. Whether the police were involved in this case is not a factual question? Well, let's go ---- I think we need to go back to the immigration judge's decision. The problem is the immigration judge essentially made no factual determinations. He essentially, unfortunately, abrogated his responsibility to consider the evidence and said, simply said, her evidence is credible, credible evidence is sufficient. So the immigration judge relied solely on that legal error to say, well, I find that the person who called is a police officer. So the problem is in making that factual determination, he committed a legal error. But he made a factual determination. It may have been clear error, but he made a factual determination. And then the Board simply says, well, we, yes, the Board says we, assuming that he is, we don't doubt what she says, that someone, some identified person identified himself as a police officer. But first it says that testimony alone is sufficient to show acquiescence. And then it also says, moreover, even if we accept all that as being true, not only that she says it, but every aspect of what she says, the Board says it's not sufficient to show essentially acquiescence by the government. It is an aberrational sort of behavior by individuals, one of whom is already incarcerated by the Salvadoran government. And so it does not meet the burden of proof. It's a sufficiency determination at the end of the day. So could they, could the Board have believed that they were police officers that did that? I believe the second aspect of the Board's decision says yes. They said, well, moreover, if we assume all that's absolutely true, that's not sufficient, as the courts say, as a matter of law, because whether or not we have acquiescence is a legal determination. Well, is that a little bit, I guess, you know, like sometimes in employment cases you have things that someone's trying to create a hostile work environment. And they say that, well, my boss made, you know, said, you know, that, you know, made sort of sexually innuendo comments or told a dirty joke in front of me. And so then we look at the cases and say, okay, if there's one stray comment, that's not enough for a, for, to show a hostile work environment. You have to show more. It has to be more pervasive. So even the fact that you assume that one comment was made and that was true. So, I mean, can we look at this record and say, okay, it was the police. You know, this did happen, exactly like she said. Can that still, couldn't it be that the Board said that, but it's still not enough to show acquiescence. You need more as a matter of law. Absolutely. I think that's a fine analogy. I'm not familiar with that area of law very much. But, yes, essentially the Board in that second sort of part of its analysis where it says, moreover, assume it is true. It says, okay, so we assume that all that's true. But what ultimately is the meaning of that? Does it meet the legal requirement of acquiescence? Well, your appellant's counsel is basically saying that the Board wasn't respecting the factual findings of the IJ, who saw the young woman, you know, who heard the testimony. Well, I think what's difficult here is that we have a case that an agency decision that was issued a whole lot of pre, before a lot of precedent. So the government's position is that the discrete historical facts under Kaplan were reviewed for clear air, because that's always been the case by the Board. Well, since the regulation, this regulation was passed in 2002. Previously, it was all de novo. But subsequently, the agency interpreted its regulations to say, well, judgment, we're going to look at that de novo. But even post-Verdor and post-Kaplan, what the agency did here is say, well, we don't doubt these facts that were found by the immigration judge, to the extent the immigration judge found a lot of facts, because unfortunately, he didn't find a lot of facts. Well, on that point, then, if there were insufficient factual findings, wouldn't the normal procedure be send it back to the immigration judge and make your findings a fact so that we can better review you? If the agency felt it was necessary, yes. But here, what we have is Petitioner did not appeal the immigration judge's decision. Instead, in their brief to the Board, they said, we adopt the factual findings of the immigration judge. So to now come to this Court and say, well, we think the immigration judge should have made more facts, well, first, you have to identify what facts had to be found, and, you know, why didn't you raise that to the agency? But the Board simply looked at the factual record as it existed, looked at the immigration judge's decision to the extent he made factual, discrete, factual determinations, and said, well, in our de novo review, we say that's not sufficient. Was the declaration referred to wherein police radios and things like that were referred to part of the record in front of the IJ? What do we do with that? It was, Your Honor. And it's awkward because it's inconsistent with the testimony. But obviously, credibility is a factual determination under the Board's interpretations of own regulations. So that would have to be reviewed de novo. So I'm not suggesting that somehow there's a credibility issue. But the problem ultimately comes, then, do you find that incredible or inconsistent testimony would compel a conclusion to overturn the Board's determination? What about the Board never says the basis of its holding that even if we assume that police were involved in kidnapping, quote, such conduct would on this record represent aberrational conduct, not systematic government sanction. There's no discussion about why the Board is making that finding here. What in the record says that? Well, the immigration judge's own decision seems to suggest that. The immigration judge is the one who kept saying the evidence was scant. The immigration judge was the one who kept saying, well, yeah, there's police corruption, but also there's the government, the El Salvadoran government works to combat this. So essentially, I appreciate the Board did not specifically say, well, these are the discrete historical facts, and we're going to lay them out, one, two, three. It did not do that. But there's no requirement that the Board identify specifically every discrete fact. As Your Honor has previously noted, sometimes you state your standard and you review the facts and you make your ultimate determination. There's no error in not saying every discrete historical fact. But how do we know that the Board applied the clear error standard here based on its scant summation of the evidence and its finding? Well, because it stated it did, Your Honor. It said we review factual determinations for clear error and we review the other determinations de novo. Now, that's slightly changed with Rador and Kaplan, but not meaningfully so for acquiescence. So Rador is the most difficult case for you and Perez-Palafax is the most difficult case for the appellant, right? Well, in some aspects, yes, Your Honor. To be clear, the government contends that Rador is incorrect. It fails to give proper deference to the agency's interpretation of its own regulations. But that being said we can't. But we're a three-judge panel, so. Absolutely. I don't agree with my colleagues all the time either, but I still do follow precedent. But what we have to look at then is what is the nuance of Rador? The problem is this seems to be a suggestion by Petitioners, not necessarily here, but in a variety of cases. Well, Rador stands for every aspect of CAT, there's a blanket clear error review by the Board. Well, that ignores Rador's reliance on Kaplan. Kaplan said, all right, the regulation says the Board reviews judgment de novo. We split judgment into two parts, factual and legal. And then Kaplan says, well, look, what is a legal determination in that respect? A legal determination is when the facts don't vary, but what do those facts mean? Are those facts sufficient to meet a legal standard? It provides an example. Its example is torture. Whatever the factual determination of what will occur, is what will occur torture? Essentially, does it rise a level of torture? Does it constitute torture? And Kaplan said, well, whether the facts show that that would be torture, that's a legal determination that the Board may review de novo. So, A, first of all, a blanket rule is inconsistent with Kaplan and Rador. So then we say, well, what then is a legal determination? The government's position is that acquiescence, whether those varying facts would show acquiescence is a legal determination. But the foundational facts, the predicate facts are facts. The discrete. The conclusion about acquiescence or not, which is perhaps a legal element, might be a legal question. But whether or not there was, for instance, you know, police officer or police officers involved in the kidnapping, whether they did so under color of law or some kind of state-sanctioned conduct, or whether it was just aberrational and isolated, those are factual questions, aren't they? And what do we do with the I.J. who referred to documents in the record indicating police are involved in common crimes and that there was a 10-year history of police officers being involved in kidnapping, et cetera, et cetera? I mean, he cites that as part of his finding that the government instigated this. Well, I think actually what Your Honor is discussing actually is sort of that split between factual and legal. That first part of the question about discrete historical facts, yes. Now, I can't give you an answer as to what every kind of fact would be or what any kind of judgment would be legal and factual. That would have to be addressed by the agency in the first instance. But here, the immigration judge found, yes, that the government's involved. And no one doubts that the government's involved. But the issue is, is that sufficient? It comes down to sufficiency versus what is. And that review is consistent with the Doran-Kaplan. The sort of analogy I come up with, Your Honor, is sort of like when this Court reviews Fourth Amendment determinations de novo in this mixed-question law and fact. Now, the Court defers to the factual determinations, but the ultimate sort of question is, well, is there probable cause or reasonable suspicion here? Was the evidence sufficient? Well, the reason the Court has that de novo authority is to try to have more consistent case law about what probable cause and suspicion, what's reasonable, essentially, in the Fourth Amendment. Well, that's the reason that the agency needs de novo review over whether evidence is sufficient. And so when you have varying facts, that you get somewhat of a, or excuse me, when you have very similar facts, that you don't have radically inconsistent results. And that's the reason that the agency interpreted its regulations to give it that de novo authority over judgments. And a view that it would be sort of a blanket, everything about CAT is, should be reviewed under clear air, would essentially gut the regulation. The word judgment, then, would be interpreted out of the regulation. And that's, in fact, why Kaplan and Rador would seem to suggest, well, all right, what does judgment mean? We have to give it some meaning. And it essentially says, well, there are legal aspects to the judgment. There's a final point I do think needs to be made, Your Honor, also, which is this. This Court will only likely see cases where the board overturns a grant of some relief. But ultimately, the narrowing the board's authority is detrimental not only to the agency, but also to aliens. The agency has broader view than this Court for a reason, because it's the Attorney General's designee. And the notion that this is inherently sort of a, as often is put forth by Petitioners,  That certainly can come up. Yes, Your Honor. If you had, if you had, then, a fact where the board previously said, you know, these facts we would grant. And then the case comes on, the idea says no. The board, then, is constrained. And that, again, the government disagrees with Kaplan as a whole. But on this particular issue, it would limit the ability to aliens get to get a de novo review. For the board to say, as a matter of law, what is past persecution? What is, when you have certain, you know, what level of proof do you have to have? Exactly, Your Honor. And I appreciate that in this particular case, the Petitioners were granted relief by the I.J. and it was overturned. But I think it does bear in mind that we don't change standards of review simply because it's more harmful to a particular party, or that we view it as a better result in the case, because this is a rule that will affect many people. And the agency's interpretation of its own regulation is consistent with Ridor and Kaplan. So we'd ask the Court to deny the petition. All right. Thank you for your argument. All right. As this panel is asking, what did the board do here and how do we know that it applied the correct standard? All of those questions aside, let's assume even if we go in the direction that the board did correctly apply the standard of review. Well, there's a presumption on some level, whether it's with juries or with courts. If the standard of, you know, if the correct jury instructions are given, it's presumed that the jury followed them. If the correct standard of review is stated, it's presumed that the court followed them. And so you're pushing the rock uphill. If they state the wrong standard of review, then that's like, yes, home run for you. Correct. We don't have that here. Regardless, there's another case, and it was cited in the Medrano's 28J letter, and this was Cole v. Holder, which was a case that Your Honor, Judge Callahan was on. And that indicates that where the BIA does make a conclusory statement, we still have to look at their actions. And that happened in Cole because the BIA had failed to mention highly probative or potentially dispositive evidence. Here we have that highly probative and dispositive evidence as far as government involvement, and that was, as I mentioned before, Diana's statement, and then a plethora of many other country reports discussing that this is not an aberrational behavior. This is something that is likely to occur again. Is there a difference between the statement and the testimony? As far as evidence, no, Your Honor, because the regulation requires that the entire evidentiary record be considered. So we had the testimony of the mother, which the judge found to be credible. The daughter did not testify, but she did have a declaration in the record, and the judge indicated he was considering all the evidence in the record and cited to the different, well, not every exhibit separately, but he said that included the applications and supporting documents. Regardless, when the BIA, even assuming here, if they did have the authority to conduct a NOVA review and look at this question of government involvement and whether it was aberrational, it's still contended that the evidentiary record does not support their findings that this was aberrant. It's not. It's a factual background question of what is going on in the country. The judge reviewed this, and even if we're going to say that the judge did not do a sufficient job and the BIA was allowed to step in, which the Medranos don't contend, but even if we go in that direction, the BIA did not do a sufficient job in reviewing the entire record. So is there a failure to discuss these, what you consider the most probative piece of evidence specifically, that's the failure of the BIA? Yes, Your Honor. In light of the fact that it overturned the finding and stated that there was no government involvement, and I do know that the BIA is not required to discuss every piece of evidence, but those pieces of evidence were significant, and they greatly contributed to the ultimate finding here. Was there a finding, though, there was a finding of government involvement or at least police officers' involvement, but was there a finding by the IJ that this was systemic government sanction? No. The judge did not use the word systemic. The judge did state that there is government involvement, and he mentioned that there, you cited to that earlier, Your Honor, that there is evidence that there's a lot of kidnappings, involvement in killings and things like that on the side of the police force. So he did not use the word systemic, but in context, the conclusion is there, the inference is there, and inferences are allowed under RIDORE. All right. If there are not additional questions, did you have anything else that you wanted to add? I do not. Thank you. All right. Thank you both for your argument. This matter will stand submitted.
judges: Chen, TROTT, CALLAHAN